# IN THE COURT OF APPEALS OF IOWA

No. 22-1592
Filed August 7, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**STEVEN LAWRENCE ELLIOTT JR.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Deborah Farmer Minot, Judge.

A defendant appeals his convictions for assault causing bodily injury and assault with intent to commit sexual abuse. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Badding and Buller, JJ.

**TABOR, Presiding Judge.**

"[D]runk people are affable, and I just thought we would hug, and he would leave, and that would be the end of it." That's how the State's witness, Jackie,[1] explained her acquiescence to Steven Elliott's alcohol-fueled request for a hug at the Iowa City Old Capitol Mall bus stop. But the hug wasn't the end of it. Jackie told the jury that Elliott put his arm around her, tried to reach up her skirt, rubbed his crotch against her buttocks, bit her neck, and grabbed her buttocks over her clothing while making graphic sexual remarks.

The jury found Elliott guilty of assault causing bodily injury and assault with intent to commit sexual abuse. Appealing those convictions, he alleges the district court committed four errors: (1) denying his motions to strike two potential jurors for cause; (2) admitting Jackie's 911 call into evidence; (3) permitting a police officer to testify about the effect of traumatic events on witness memories; and (4) allowing the jury to hear a reference to Elliott getting out of jail. Finding no error, abuse of discretion, nor prejudice in the district court's rulings, we affirm.

I.      **Facts and Prior Proceedings**

Jackie was waiting for a bus outside Old Capitol Mall in October 2021 when a stranger approached her. He "smelled heavily of alcohol" and told her that "he had just gotten out of jail." He asked for a hug, and she agreed. But his actions went far beyond that gesture. Jackie recalled that Elliott gripped her tight with both arms and would not let go when she signaled that she was "done" hugging.[2] He

---

[1] Jackie is not the victim's legal name but it is what people call her. We use it instead of her legal name or initials.

[2] At trial, Jackie narrated a surveillance video that had captured Elliott's actions at the bus stop.

made sexual remarks and "was just biting repeatedly on the side of the neck" causing her pain and leaving a red mark. Meanwhile he kept "lowering his hands" while she braced herself to keep some distance between them. Nearly twenty minutes after their initial encounter, Elliott "went from holding [her] with his right arm" to "shoving [her] in front of him." He put his hands in front of her stomach, "really close to [her] crotch." It was then that he rocked her "back and forth against his crotch," burying his face in her hair. Only when her bus came did he let go.

After she got off the bus at her workplace, Jackie called 911 to report the assault. Officer Alex Stricker responded to the call and took her statement. Through her report, the officer managed to identify Elliott as a suspect. Officer Ashley Jay found Elliott on the pedestrian mall in downtown Iowa City. He admitted to Officer Jay that he talked to a woman near the bus stop. He also acknowledged putting his arm around her, "kissing her on the cheek," and "biting her on the neck, though he described it more as a hickey than biting." Meanwhile, Officer Stricker tracked down a surveillance video of the assaults.

The State charged Elliott with assault causing bodily injury, a serious misdemeanor, in violation of Iowa Code sections 708.1(2) and 708.2(2) (2021) and assault with the intent to commit sexual abuse, an aggravated misdemeanor, in violation of section 709.11. The jury found him guilty as charged. Elliott now appeals those convictions.

## II.     Analysis

### A.     Did the district court abuse its discretion in denying Elliott's motions to strike two jurors for cause?

Elliott first contests the court's refusal to strike for cause two prospective jurors who revealed their personal experiences with sexual abuse.[3]  Strikes for cause fall under Iowa Rule of Criminal Procedure 2.18(5).  Paragraph (k) allows a party to object if a would-be juror has "formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial."  Strikes for cause have merit if the prospective jurors hold such fixed opinions on the merits of the case such that they cannot be impartial in deciding whether the defendant is guilty or not guilty.  *See State v. Linderman*, 958 N.W.2d 211, 218 (Iowa Ct. App. 2021).

During jury selection, Jurors 14 and 18 each shared decades-old occurrences of sexual abuse in their families.  Separated from the rest of the panel, Juror 18 recounted two incidents of sexual abuse suffered by her then-teenaged daughter thirty years earlier.  One incident involved impropriety by a teacher and the other, advances by a stranger in an apartment complex game room.  Juror 18—a retired high school secretary—said that she had encountered allegations of sexual misconduct in her work.  In those school cases, she recalled: "I was fine at being impartial with that and trying to see both sides."  But she said it was different when the abuse was "too close to home" and involved her daughter.  As for Elliott's

---

[3] The defense preserved error on this claim by both (1) moving to strike these prospective jurors and (2) identifying two other jurors he would have removed if given extra peremptory strikes.  *See State v. Jonas,* 904 N.W.2d 566, 583–84 (Iowa 2017).

trial, she "would sure try" to be fair and wanted to do "the right thing." But she cautioned that she might "get emotional." Still, she affirmed that Elliott was presumed innocent because "that's the whole basis of our system." The district court denied the defense motion to strike Juror 18, finding that her answers did not indicate that she would be unable to be fair and impartial.

In the same vein, Juror 14—age thirty-one—disclosed during individual voir dire that she had been sexually abused by a family member when she was six or seven years old. She said: "I think I could be fair and impartial, but it's just kind of a sensitive subject to me." Juror 14—a pediatric nurse—told the judge that she had "extreme anxiety" when it came to sexual abuse and might have trouble listening to the facts of the case. She predicted that she would be "fidgeting a lot" if the testimony brought up "memories of what happened" to her. But at the end of her questioning, she confirmed that she could be an unbiased juror. The district court then denied the defense motion: "I'm not convinced that anxiety over subject matter is a sufficient reason to strike a juror for cause."

We review these two rulings for an abuse of discretion. *State v. Williams*, 285 N.W.2d 248, 267 (Iowa 1979) ("[T]rial court is vested with broad, but not unlimited, discretion in ruling upon a challenge for cause."). But Elliott insists that our deference only goes so far, quoting this passage:

> Although a ruling may be technically right, if it must be so doubtful as to raise a fair question as to its correctness, it is far better to give the accused the benefit of the doubt, to the end that he and all other men may be satisfied that his rights have not been invaded.

*Jonas*, 904 N.W.2d at 575 (quoting *State v. Teale*, 135 N.W. 408, 410 (Iowa 1912)).

The court's rulings here are not "so doubtful as to raise a fair question" about their correctness. Neither prospective juror had experiences that mirrored those alleged by the prosecution. *Compare State v. Hatter*, 381 N.W.2d 370, 372 (Iowa Ct. App. 1985) (holding district court should have sustained challenge for cause to prospective juror whose ordeal as a rape victim was strikingly similar to that of complaining witness), *with State v. Doorenbos*, No. 19-1257, 2020 WL 3264408, at *7 (Iowa Ct. App. June 17, 2020) ("Familiarity with the trial topic is different from a bias against the defendant or a preconceived view of his guilt."). Survivors of sex abuse are not automatically barred from jury service in sex abuse prosecutions. *Cf. State v. Mann*, 512 N.W.2d 528, 533 (Iowa 1994) (comparing disqualification of judge to disqualification of jurors who were sexual abuse victims). True, both Juror 14 and Juror 18 acknowledged emotion or anxiety triggered by the allegations of sexual abuse. But both offered assurances of objectivity; they understood that Elliott was presumed innocent; and they recognized that he had no role in their prior experiences. *See id.* And because at least twenty years had elapsed between the incidents in the jurors' lives and the trial, it was less likely that their impartiality could be reasonably questioned. *See id.* On this record, the district court did not abuse its discretion in denying the defense motions to strike these prospective jurors.

**B.    Did the district court wrongly admit hearsay into evidence?**

"He bit me.  It hurt."  That assertion was part of Jackie's call to the 911 operator reporting that she had been "sexually assaulted."  She also described him "groping" her at the bus stop.  She placed the call between thirty and forty-five

minutes after her encounter with Elliott.[4]  Before trial, the State asked the court to find that the five-minute recording was admissible.  The defense objected on hearsay and confrontation grounds.  After confirming that the State planned to call Jackie to testify, the court agreed to admit the recording under the hearsay exception for excited utterances.  Elliott challenges that ruling here.

We review his hearsay challenge to correct errors at law.  *State v. Skahill*, 966 N.W.2d 1, 8 (Iowa 2021).  Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.  *See* Iowa R. Evid. 5.801(c).  An exception to the hearsay rule exists for excited utterances, which are statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Iowa R. Evid. 5.803(2).  Elliott disputes that Jackie was still under the stress of the alleged sexual assault when she called 911.

The State defends admission of the 911 call under the hearsay exceptions for excited utterances, present-sense impressions, and then-existing physical conditions.  *See* Iowa R. Evid. 5.803(1), (2), (3).  Beyond arguing those exceptions, the State contends any error in admission of the recording was harmless.  *See State v. Parker*, 747 N.W.2d 196, 209 (Iowa 2008).  We take that final option.

Jackie's statements in the 911 recording were just a preview of her trial testimony.  *See Skahill*, 966 N.W.2d at 16 (noting State may overcome presumption of harm by showing that wrongly admitted evidence was cumulative).  For instance, she testified that the bite to her neck was "really painful."  What's

---

[4] Jackie estimated that the bus ride to her workplace took twenty to twenty-five minutes, and then she was "bawling" in the hallway for another ten to twenty minutes before she called 911.

more, Elliott admitted to Officer Jay that he gave Jackie a "hickey."  Even if wrongly admitted, we will not consider hearsay prejudicial if substantially the same evidence is properly in the record.  *See State v. Juste*, 939 N.W.2d 664, 675 (Iowa Ct. App. 2019).  Plus, the State's evidence establishing Elliott's guilt was overwhelming.  The jury watched the assaults captured on surveillance footage.  As the State argues: "Under these circumstances, the 911 call had no effect on Elliott's fate."  *See State v. Caples,* 857 N.W.2d 641, 648 (Iowa Ct. App. 2014) (concluding there was "overwhelming evidence of guilt and any evidentiary error was harmless").

### C. Did the district court abuse its discretion in allowing a police officer to testify how traumatic events can affect a witness's memory?

Elliott next argues that the court should have sustained his objection to a police officer's testimony about the effect of trauma on a person's "recollection of events."  The challenged testimony came from Officer Jay, who arrested Elliott.  After Jay shared the details of her interview with Elliott, the prosecutor switched gears.  He asked—based on Jay's experience and training—whether all people react the same to traumatic events.  Over a defense objection, Jay was allowed to answer: "No."  The prosecutor next asked what effect trauma may have on a witness.  The defense again objected on grounds of improper expert testimony, vouching, and as outside the scope of the minutes of testimony.  The court sustained that objection.  Undaunted, the prosecution asked: "In general, if someone experiences trauma, does that affect their ability to recall?"  The court again sustained a defense objection.  Taking a different tack, the prosecutor questioned Officer Jay about her experience and extensive training on the effects

of trauma—seeking to qualify her as an expert.  Defense counsel complained that they had no notice of this line of expert testimony.  The court agreed with the lack-of-notice argument.

Yet the prosecutor, over a defense objection,[5] persisted in asking about the effects of trauma:

> Q. In your thousands of calls for people who have experienced trauma, does that traumatic incident affect their ability to recall certain things that happened during the incident?  A. Yes.  In my training and experience over the twelve years of my career I have learned and then subsequently seen regularly that their recollection of events can be different than the events.  As in they'll forget things.  They may get things out of order.  I mentioned our peer support training.  When my officers are involved in critical incidents, we don't talk about the incident for about forty-eight hours unless they need to talk about a specific thing because we try to give them a couple sleeps to get their brain calmed down so they can recall information a little more clearly.  And generally I found that it seems like they recall more details and information maybe more in a correct order.

On appeal, Elliott renews his objection, contending the officer's answer was "outside the scope of the minutes of testimony, it bolstered the credibility of [Jackie], and it was improper opinion testimony."  The State contests the claims of vouching and improper opinion but concedes that the testimony was beyond the scope of the minutes.  *See* Iowa R. Crim. P. 2.5(3) (requiring State to provide the accused with "a full and fair statement" of the expected testimony of each witness).

But the State maintains that any error in admitting Officer Jay's brief testimony on trauma was harmless.  We agree.  Like the hearsay challenge, the State is able to overcome any claim of error through the strength of its evidence against Elliott.  *See State v. Thoren*, 970 N.W.2d 611, 636–37 (Iowa 2022)

---

[5] The court overruled the defense objection to this question, finding that it was "a fact question" rather than calling for an expert opinion.

("Overwhelming evidence of the defendant's guilt can make the error harmless."). Besides Jackie's testimony, the State presented video evidence of Elliott's actions to the jury. By contrast, Officer Jay's generic discussion of memory and trauma was isolated, and the officer did not tie her opinion to anything that Jackie reported or left out of her report to police. In fact, Officer Jay used her colleagues, rather than crime victims, as a point of reference. Moreover, the defense vigorously cross-examined Jackie about discrepancies between her trial testimony and her statements to Officer Stricker. On this record, the admission of Officer Jay's opinion on trauma did not "injuriously affect" Elliott's rights. *Id.* (quoting *Parker*, 747 N.W.2d at 209).

> **D.** **Did the district court abuse its discretion in allowing the victim to testify that Elliott told her he was just released from jail?**

Elliott's fourth claim concerns the statement he made to Jackie when he first approached her at the bus stop. Over his objection, she testified that Elliott told her "early on" that he had "just gotten out of jail." Hearing that information made her feel "pretty scared." The district court denied defense counsel's motion to exclude that testimony, reasoning that "the critical element that the State has to prove is your client's intent and the effect of his actions and statements to a victim." We review that ruling for an abuse of discretion. *State v. Richards*, 879 N.W.2d 140, 153 (Iowa 2016).

On appeal, Elliott argues that his jail statement should have been excluded under Iowa Rule of Evidence 5.404(b) (2022). That rule provided:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This evidence may be admissible for another purpose such as proving motive,

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Iowa R. Evid. 5.404(b)(1), (2).

But not all evidence of other crimes falls within the scope of rule 5.404(b). *State v. Nelson*, 791 N.W.2d 414, 419 (Iowa 2010). An example of evidence outside the rule's scope are facts "inextricably intertwined with the crime charged." *Id.* If the other-crime evidence is inseparable from the present-crime evidence, then the court need not consider its reflection on the character of the accused. *Id.* at 420. "Instead, the inextricably intertwined evidence is subject to the same general admissibility requirements as other evidence that is used to provide the fact finder with a complete picture of the charged crime." *Id.*

The State argues that Elliott's jail statement is the kind of evidence inseparable from the assaults that he was being prosecuted for. We agree. Elliott's request for a hug from a stranger at the bus stop was followed closely by his revelation that he was just released from jail. As the State notes: "Without the jail comment, the victim's muted reaction would make little sense. She testified that she was afraid he would become violent when she heard the statement." If the district court had severed Elliott's jail comment from the narrative of the charged assaults, that narrative would have been confusing and misleading. *See id.* at 423. The inextricably intertwined theory applies here. Elliott's jail comment gave the jury a complete picture of the charged assaults. The district court did not abuse its discretion in allowing Jackie to testify about his comment.

**AFFIRMED.**